IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
STATESVILLE DIVISION
5:02CV84-1-V
5:99CR62-2-V

| | |
|---|---|
| JAIME RAMON CARDENAS, ) | |
| ) | |
| Petitioner, ) | |
| ) | |
| v. ) | **O R D E R** |
| ) | |
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Respondent. ) | |
| _____) | |

**THIS MATTER** comes before the Court on Respondent's Motion for Summary Judgment, filed October 4, 2002.

For the reasons set forth below, Respondent's Motion for Summary Judgment is granted and Petitioner's Motion to Vacate is dismissed.

## PROCEDURAL HISTORY

A grand jury indictment charged Petitioner, along with two other individuals, with one count of conspiracy to possess with intent to distribute methamphetamine in violation of 21 U.S.C. §§ 841(a)(1) and 846. On March 9, 2000, after trial by jury, Petitioner was convicted. On August 10, 2000, at Petitioner's sentencing hearing, Petitioner's counsel strenuously argued that the Government's § 851 notice was insufficient. After much discussion, this Court ultimately ruled in Petitioner's favor. In addition, Petitioner's counsel argued against the inclusion of certain drug amounts in Petitioner's relevant drug total.

Again, Petitioner's counsel's argument prevailed and Petitioner's base offense level was reduced to 30. This Court then sentenced Petitioner to 145 months imprisonment and three years of supervised release. Petitioner proceeded to directly appeal his sentence and conviction to the United States Court of Appeals for the Fourth Circuit. On May 10, 2001, the Fourth Circuit issued an opinion affirming Petitioners's conviction and sentence. Petitioner then filed a petition for writ of certiorari with the United States Supreme Court which was denied.

On July 22, 2002, Petitioner filed the instant Motion to Vacate, Set Aside, or Correct Sentence with this Court. In his Motion to Vacate, Petitioner raises three claims. Petitioner alleges that: 1) his counsel was ineffective for failing to inform him of his right to testify or for not allowing him to testify in his own behalf; 2) his counsel was ineffective for failing to call an alibi witness; and 3) his counsel was ineffective for failing to argue that methamphetamine should have been classified as a Schedule III controlled substance.

## **LEGAL ANALYSIS**

Petitioner's contention that he received ineffective assistance of counsel is governed by the holding in Strickland v. Washington, 466 U.S. 668, 687-91 (1984). In Strickland, the Supreme Court held that in order to succeed on an ineffective assistance of counsel claim, a petitioner must establish that counsel's performance was constitutionally defective to the extent it fell below an objective standard of reasonableness, and that he was prejudiced thereby, that is, there is a reasonable probability that but for the error, the outcome would have been different. In making this determination, there is a strong presumption that counsel's conduct was within the wide

2

range of reasonable professional assistance. Id. at 689; Fields v. Attorney General of Md., 956 F.2d 1290, 1297-99 (4th Cir.), cert. denied, 474 U.S. 865 (1995). Petitioner bears the burden of proving Strickland prejudice. Fields, 956 F.2d at 1297. If the petitioner fails to meet this burden, a "reviewing court need not consider the performance prong." Id. at 1290.

**A. Right to Testify**

Petitioner alleges that his counsel was ineffective because he failed to inform him that the decision whether Petitioner would testify was ultimately for Petitioner to make. Petitioner contends that on several occasions he informed counsel that he wanted to testify and that counsel responded that Petitioner would get an opportunity to testify. Petitioner further contends that "at no point did petitioner abandoned [sic] his right to take the stand, and even though the petitioner and counsel argued about this fact, counsel kept on stating that the Government's case was weak and thus there wasn't a need to testify." (Pet. Mot. to Vac. p. 1).

In response, Petitioner's trial counsel sets forth in his affidavit that before and during trial he and Petitioner discussed "trial strategy including the question of whether he should testify, and we left it open, to be decided when it came time to present the defense's case." (Michel Aff. ¶ 13). Petitioner's counsel further states that at the close of the government's case he "recommended to Mr. Cardenas that he not testify and that we rest, because the government's case was weak and I did not want to give the government a chance to come back in rebuttal to buttress its case, with more 404(b) evidence to further impeach the character of Mr. Cardenas." (Michel Aff. ¶ 14). Petitioner's counsel swears

3

that Petitioner "did not object to this decision that he not testify, and he too seemed to believe that the best course of action was to rest and trust the jury to do its job." (Michel Aff. ¶ 15).

It is well settled that a criminal defendant has a constitutional right to testify on his own behalf at trial." United States v. Midgett, 342 F.3d 321, 325 (4th Cir. 2003). However, the "advice provided by a criminal defense lawyer on whether his client should testify is a 'paradigm of the type of tactical decision that cannot be challenged as evidence of ineffective assistance.'" Carter v. Lee, 283 F.3d 240, 249 (4th Cir. 2002)(quoting Hutchins v. Garrison, 724 F.2d 1425, 1436 (4th Cir. 1983), cert. denied, 464 U.S. 1065 (1984)); see also, Jones v. Murray, 947 F.2d 1106, 1116, n.6 (4th Cir. 1991)(reiterating principle that advice to testify is paradigmatic of strategic decision).

In the instant case, both parties agree that Petitioner and his counsel discussed whether or not Petitioner should testify. Both parties also agree that Petitioner's counsel advised Petitioner not to testify in light of Petitioner's counsel's assessment that the government's case was weak.[1] Petitioner's counsel specifically states that Petitioner did not object to and in fact seemed to agree with Petitioner's counsel's recommendation that he not testify. Significantly, Petitioner does not assert that after he and counsel discussed whether or not he should testify he still maintained that he wished to testify. Indeed, the contemporaneous evidence supports a conclusion that Petitioner did not disagree with his counsel's advice not to testify. For instance, Petitioner did not object at trial when his

---

[1] Co-Defendant also chose not to present evidence or to testify on his own behalf. (Tr. Trans. p. 309).

4

counsel announced that the defense rested and would call no witnesses. (Tr. Trans. p. 309). Moreover, at his sentencing hearing, when given an opportunity to address the Court, Petitioner did not state that he had not been permitted to testify or that he had wanted to testify but counsel did not allow him to do so. Rather, he stated "[u]nfortunately, I didn't have a chance to get on the stand to let you know my side of the story." (Sent. Hearing Trans. p. 31). This statement does not evince a desire on the part of Petitioner to testify at trial wherein his will to do so was overcome by intransigence on the part of his lawyer. Petitioner and his counsel made a tactical decision that Petitioner should not testify.

It thus appears to the Court that counsel's advice persuaded Petitioner that it was in his best interest not to testify. It is not ineffective to disagree with your client, nor is it ineffective to strongly advise your client not to testify. In fact, it is counsel's responsibility to advise a defendant as to whether in his professional judgment a defendant should testify. It appears that is precisely what counsel did in the instant case. However, now, with the advantage of 20/20 hindsight, Petitioner is asserting that it was the wrong advice and that he wishes he had taken the stand to testify. The fact that Petitioner took the advice of his attorney and was convicted does not comport with a finding that his right to testify was violated.

Moreover, even if Petitioner could establish that his counsel was ineffective with regard to Petitioner's right to testify, he cannot establish the requisite prejudice necessary to prevail on his ineffective assistance of counsel claim. See Sexton v. French, 163 F.3d 874, 884 (4th Cir. 1998)(defendant failed to establish that he was prejudiced by trial

5

counsel's alleged failure to advise him of his right to waive his right to testify or to advise him that the decision to testify was his, thus defeating the ineffective assistance of counsel claim, since the result of the proceeding was not fundamentally unfair or unreliable).

Petitioner contends in his Motion to Vacate that he wanted to take the stand and explain his relationship with Walker. In his response to the Government's Motion for Summary Judgment, Petitioner asserts that if he had taken the stand he would have explained that he only bought used cars from Walker and sold them for profit. Petitioner states that while some of these transactions may have been illegal, they did not involve the exchange of drugs for vehicles. Petitioner further states that no cash was discovered by the arresting officers because Juan, the ultimate buyer of the truck, insisted that a mechanic inspect the truck first. Petitioner contends he also would have testified that the truck involved was not worth the amount of methamphetamine involved in the transaction. He would have explained that when trading drugs for something the value of the object purchased by the drugs is only 25% of its value. Thus, the trade at issue was a really bad deal and as such he would not have agreed to it. Finally, Petitioner asserts that he would have testified that it would not have been logical for him to come from California and sell methamphetamine in North Carolina when the market for methamphetamine is far larger in California.

Petitioner's current contention as to what he would have testified directly contradicts his own words at his sentencing hearing. That is, at his sentencing hearing Petitioner stated to the Court that "I admitted to selling marijuana and I admitted to having – I was

6

going to buy the truck in question with marijuana." (Sent. Trans. p. 32).[2] Consequently, Petitioner's current contention that he would have testified at trial that he was only the middleman for "Juan" who was going to buy the truck for cash is disingenuous at best and does not support a finding that he was prejudiced by the fact that he did not testify.

Moreover, even if one could believe Petitioner would have testified as he now states he would have, such testimony would not have been persuasive. Such testimony would have served to demonstrate an intimate familiarity with the drug scene, including methamphetamine. How else would Petitioner know the street etiquette for trading drugs for vehicles or the value of methamphetamine. Moreover, he states that he would have admitted that what he was doing was sometimes illegal – such an admission would certainly not bolster his credibility to the jury. Finally, Petitioner argues why would he come to North Carolina to sell methamphetamine when California has such a strong market. Petitioner, however, had residences in South Carolina. Given the unpersuasive, fanciful nature of Petitioner's proposed testimony and the comparative strength of the Government's evidence[3] this Court concludes that Petitioner was not prejudiced by his failure to testify.

---

[2] In his affidavit Petitioner's counsel also sets forth under oath that Petitioner had "repeatedly offered to accept responsibility for marijuana, saying that he and Mr. Walker had discussed the possible use of marijuana as currency for the truck, but that they had not yet reached the terms of payment, because the truck still had to be inspected." (Michel Aff. ¶ 11).

[3] The United States Court of Appeals for the Fourth Circuit in denying Petitioner's direct appeal stated ""when viewed in light of the overwhelming evidence against [Petitioner]."

**B. ALIBI WITNESS**

Petitioner also alleges that his counsel was ineffective for failing to call an alibi witness to testify. Petitioner asserts that this alibi witness "Juan"[4] would have testified that he was interested in purchasing the vehicle at issue, thus rebutting the allegation that the vehicle was going to be exchanged for methamphetamine. Petitioner contends that he provided counsel with the alibi witness' name, phone number, and address, but that his counsel never followed up on this lead. Petitioner asserts that such testimony would have altered the outcome of his trial given the lack of any direct evidence of his involvement with methamphetamine.

At a minimum, Petitioner cannot satisfy the prejudice prong of the Strickland analysis. Petitioner provides no evidence whatsoever to support his bald assertions that this individual would testify to the facts alleged by Petitioner. As such, Petitioner's ineffective assistance of counsel claim on this basis must fail. See Nickerson v. Lee, 971 F.2d 1125, 1136 (4th Cir. 1992)(unsupported allegations are not sufficient to warrant an evidentiary hearing).

**C. FAILURE TO CHALLENGE APPLICABLE DRUG SCHEDULES**

Finally, Petitioner alleges that his counsel was ineffective for failing to argue that the Court erred in sentencing him based upon methamphetamine being a Schedule II controlled substance because methamphetamine had not been properly reclassified. More

---

[4] Interestingly, Petitioner asserts that shortly after he was arrested he managed to get in contact with Juan. (Mot. to Vac. p. 8). Petitioner provides no explanation as to why he did not ask Juan to, or why Juan did not, initiate contact with Petitioner's counsel.

8

specifically, Petitioner argues that although the Attorney General promulgated changes in Schedule II to include all methamphetamine, § 812(c), which sets forth which controlled substances are considered Schedule III substances, has never been properly amended to exclude methamphetamine. Thus, Petitioner argues that the Attorney General's reclassification of methamphetamine is not valid. Petitioner concludes that because statutes (here § 812(c)) trump conflicting federal regulations (here 21 C.F.R. § 1308.12(d)), he cannot be sentenced with methamphetamine being considered a Schedule II controlled substance.

At the time Petitioner was sentenced on August 10, 2000, it was long accepted that methamphetamine was a Schedule II controlled substance. Petitioner cites to, and this Court knows of, no cases in the United States Court of Appeals for the Fourth Circuit, much less any other circuit,[5] that has ruled that the Attorney General's reclassification of methamphetamine from a Schedule III controlled substance to a Schedule II controlled substance in July 1971 was ineffective and that methamphetamine remains a Schedule III controlled substance for federal sentencing purposes. Consequently, this Court holds that Petitioner's counsel's failure to argue that methamphetamine was a Schedule III controlled substance did not constitute ineffective assistance of counsel.

Moreover, Petitioner cannot establish that he was prejudiced. That is, Petitioner's

---

[5] Indeed, those courts of appeals that have addressed this or similar issues, have unanimously concluded that the reclassification of methamphetamine as a Schedule II controlled substance applies to all forms of methamphetamine. See e.g., United States v. Macedo, 406 F.3d 778, 784-85 (7th Cir. 2005); United States v. Gori, 324 F.3d 234, 240 (3rd Cir. 2003); United States v. Segler, 37 F.3d 1131, 1133 (5th Cir. 1994); United States v. Kendall, 887 F.2d 240, 241 (9th Cir. 1989).

9

base offense level of 30 was calculated based upon the amount of methamphetamine testified to at trial. This calculation was not based upon the schedule in which methamphetamine belongs. Likewise, § 841(b)(1)(A)(viii) imposes a ten year minimum penalty for illegal activity involving "500 grams or more of a mixture or substance containing a detectable amount of methamphetamine, its salts, isomers, or salts of its isomers." The clear language of § 841(b)(1)(viii) therefore indicates that its ten year minimum penalty depends on the amount of methamphetamine at issue and not on the schedule in which methamphetamine belongs. Because Petitioner cannot establish that he was prejudiced his ineffective assistance of counsel claim must fail on that basis as well.

**THEREFORE, IT IS HEREBY ORDERED** that:

1. Respondent's Motion for Summary Judgment is **GRANTED**; and

2. Petitioner's Motion to Vacate, Set Aside, or Correct Sentence is **DISMISSED**.

**Signed: September 29, 2005**

Richard L. Voorhees
United States District Judge